28 N.J. Super. 55 (1953)
100 A.2d 337
PHILIP D. GOLDSTEIN, PETITIONER-RESPONDENT,
v.
CONTINENTAL BAKING CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided October 27, 1953.
*57 Mr. John W. Taylor argued the cause for appellant.
Mr. Isadore Rabinowitz argued the cause for respondent (Mr. Nathan Rabinowitz, attorney).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Continental Baking Co. appeals from a judgment of the Passaic County Court affirming a compensation award in favor of petitioner Goldstein, its employee, by the Workmen's Compensation Division. The single question raised on this appeal is whether the company had knowledge or notice of petitioner's claimed accidental injury within 90 days of August 31, 1951, the alleged date of its occurrence. It denies it had either knowledge or notice within the time and in the manner prescribed by R.S. 34:15-17 and 18. Both tribunals below found to the contrary.
Petitioner worked for Continental as a baker's helper. His duties consisted mainly of lifting and placing bread pans into an oven. He testified that on August 31, 1951 he felt a bad pain in his back while reaching down to get a pan. He did not tell anyone of the incident, but finished out the day. The next day he phoned that he would not be in to work. He then returned to work and continued at his job because he thought he had only a slight cold in his back. Petitioner further testified that he told his supervisor, Mr. Pfizenmaier, about his back condition only "after I had gone to the doctor at several months later." By way of explanation he said, "See, the reason I didn't go right away was because I figured I might have a slight cold in there, so I didn't take it serious enough."
Petitioner first went to a doctor on October 10, 1951, and was given the following note:

"10/10/51
To whom it may concern:
Philip Goldstein is under my care for back pain. He must not do any twisting, turning or bending in order for this condition to improve.
D. DOKTOR, M.D."
*58 He gave this note to Pfizenmaier but could not remember when. There is no proof as to just when the note was delivered, but it was in the company's possession at the time of the trial.
Petitioner continued to work until December 8, the beginning of his two-week vacation period. He testified that while on vacation he phoned Pfizenmaier and said he would take a few weeks' rest, that his back was giving him trouble and he would not be able to return to work at the end of his vacation. He apparently also went to the plant during the vacation period and told Pfizenmaier that his back was bothering him too much and he would have to take "a little resting period to see if it would go away."
It is uncontroverted that petitioner worked continuously from the time of the alleged accident up to the beginning of his vacation on December 8, with the exception of September 1. Counsel stipulated that petitioner's employment with Continental ended in December 1951 because of the slack season; petitioner being low man on the seniority list was the first to be let go.
The deputy director, after referring to the doctor's note of October 10, concluded that the note had been given to the employer on that date, and in his summary of determination, rule for judgment and award found that Continental had "due and timely" notice of the accident. In passing on the issue of knowledge or notice, the County Court found that "the employer, under the circumstances of the case, had actual knowledge of the occurrence of the injury within the requirements of the statute"  that is, within 90 days after its occurrence.
Our former Court of Errors and Appeals held in Hercules Powder Co. v. Nieratko, 114 N.J.L. 254 (E. & A. 1934), affirming 113 N.J.L. 195 (Sup. Ct. 1934), that the requirement of knowledge or notice is a prerequisite to recovery; compliance with the provisions of R.S. 34:15-17 and 18 is a condition precedent to the enforcement of a claim, and not merely directory. The statute not only *59 prescribes the manner of service of the notice, but its form. The court said:
"The obvious purpose of the notification is that the employer may in the absence of knowledge receive written notice that a claim is presented for an injury received by an employee in the course of employment while engaged in his work in a place and at a time designated in the notice. Being in writing, it becomes a permanent record as between the parties, definite in character; a record that can be preserved for future reference, thus avoiding controversy or dispute between the parties as to the information thus conveyed, and leaving nothing open as a subject of future misunderstanding. It is thus for the protection of both employer and employed." 114 N.J.L. at page 255.
In General Cable Corp. v. Levins, 124 N.J.L. 223 (E. & A. 1940), affirming 122 N.J.L. 383 (Sup. Ct. 1939), the same court, in finding that the employer there had actual knowledge of the claimed injury said:
"The meaning and intention of the statute is reasonably clear. There is nothing fanciful or abstruse about it. It is simply that the law requires, in fairness to the employer, that there be brought home to him the occurrence of an injury suffered by an employe. In the facts and circumstances here exhibited that requirement was performed. One thing more  knowledge, under the statute, of the occurrence of injury is the substitute for the statutory notice of such injury; and that knowledge need not be broader or more comprehensive in detail than that which is required for valid notice. Now a notice (the form is found in the statute  R.S. 34:15-18) need only inform the employer that a personal injury was received by an employe who was in the employ (stating the place) while engaged as (stating the kind of work) at a given time; and a variation from this is immaterial so long as the information imparted by the notice acquaints the employer with the fact that a named person in the employ suffered an injury in the course of his employment."
There is nothing in the record to show that the employer at any time within the statutory period of 90 days received notice or, in lieu of notice, possessed knowledge of the occurrence or existence of the claimed injury. There is no suggestion that anyone observed petitioner experience a back pain on August 31 or that the incident was then communicated to the company. In fact, petitioner kept *60 right on working; he did not report his back trouble nor tell his supervisor about it that day. The testimony that he called the next day and said he would not be in to work tells us nothing as to whom he spoke or what reason he assigned, if any, for remaining away. As noted, he did speak to his supervisor "after I had gone to the doctor at several months later"  this would be some time after October 10, because "several months" imports more than two months. Webster's New International Dictionary (2d ed.); Lunt v. Post Printing & Publishing Co., 48 Colo. 316, 110 P. 203, 30 L.R.A., N.S., 60 (Sup. Ct. 1910); Day v. Becker, 145 S.W. 1197 (Tex. Civ. App. 1912).
If we assume that this conversation took place within the 90-day statutory period, all that it establishes is that he spoke to Pfizenmaier about either having a pain or a cold in his back; there is no testimony or suggestion that he told the supervisor anything which might reasonably indicate that his back trouble was caused by something that happened while at work on August 31. Of course, anything petitioner said over the phone or on his visit to the plant while on vacation after December 8 falls outside the 90-day period.
There was, accordingly, no notice to or knowledge possessed by the employer of the alleged accident unless we find it in the note given by Dr. Doktor to petitioner on October 10. We find nothing in the record to support the County Court's conclusion that it was handed to Pfizenmaier "on or about" October 10. That it bears that date is not proof of its delivery date, particularly when petitioner himself suggests that he might not have delivered a note until after December 8. At one point in his testimony he indicated that he had gotten a note from his doctor and brought it to his supervisor during the vacation period. He was not sure whether the doctor had given him one or two notes. The doctor did not see petitioner again until December 18, 1951.
The cases cited by petitioner for the proposition that the date of delivery of the note may be presumed from the date it bears do not support his contention. These cases relate to commercial paper and formal instruments like deeds and *61 leases. The industry of counsel has failed to produce any decision which holds that the date of a note such as was given in this case is presumptive proof of the date of its delivery.
All that the note itself says is that petitioner is under the care of Dr. Doktor for back pain (not strain) and must not do any twisting, turning or bending if his back was to improve. No matter when the note may have been handed Pfizenmaier after October 10, there is nothing in it which suggests that petitioner's work was the cause of his condition; its language cannot be said to have communicated to the employer notice or knowledge that petitioner had suffered an injury arising out of and in the course of his employment. The back pain which the doctor was treating might have arisen from any one of a number of causes not connected with the employment.
The burden is on petitioner to establish, as a prerequisite to recovery, that his employer had knowledge or notice of an injury occasioned by his employment. Mere knowledge or notice of the fact that petitioner suffered from a pain in his back, without his employer knowing when, where or how it occurred, is not enough to satisfy the statutory requirement. Korman v. Hygrade Food Products Corp., 130 N.J.L. 468 (Sup. Ct. 1943), affirmed 131 N.J.L. 188 (E. & A. 1944).
Petitioner relies on General Cable Corp. v. Levins, 122 N.J.L. 383 (Sup. Ct. 1939), affirmed 124 N.J.L. 223 (E. & A. 1940) and Kardos v. American Smelting & Refining Co., 132 N.J.L. 579 (Sup. Ct. 1944), affirmed 133 N.J.L. 39 (E. & A. 1945). These cases are clearly distinguishable. In the General Cable Corp. case petitioner bumped his head while at work, experienced trouble with his eye and then went to see the plant doctor who removed a foreign body from the eye. The court properly found that the employer had knowledge of the accident. In the Kardos case petitioner reported his cold to his foreman and was sent to the plant physician; after the cold developed into pneumonia the plant physician called on and saw petitioner at his *62 home. The disability was directly related to plant conditions. Under these circumstances, the court correctly concluded that the employer had knowledge of the injury.
Petitioner comments on the failure of respondent to produce the supervisor Pfizenmaier as a witness and argues that under the circumstances it may legitimately be inferred that if produced he would not have refuted petitioner's testimony. In his claim petition as well as at the hearing petitioner represented that respondent had notice or knowledge of the accident. The employer consistently maintained, at the close of petitioner's case before the deputy director and since, that petitioner failed to carry the burden of proof that was his. It is not for the employer to make out the employee's case.
This is not a situation like that in Series Publishers, Inc., v. Greene, 9 N.J. Super. 166 (App. Div. 1950), where plaintiff sought to recover the purchase price of a set of books bought by and delivered to defendant, and though forewarned by defendant's answer that he would maintain that the set was not as represented by the agent who made the sale, failed to produce the agent. Nor is it a case like Wratchford v. Millburn Twp., 105 N.J.L. 657 (E. & A. 1929), where the prosecutor in certiorari did not see fit to testify or to call in witnesses, a fact which led the court to remark that his omission to do so raised a presumption against his claims.
The report of Dr. Nicola dated November 1, 1952, more than ten months after the filing of the claim petition, and offered in evidence by Continental, does not help petitioner's case. It was medical proof establishing that petitioner was suffering from a lumbosacral sprain associated with a facett syndrome. Though it recites that petitioner had felt a sharp pain in the lower part of his back when he bent over to put a pan of bread into the oven on August 31, 1951, this statement was based upon a history given at that late date by Goldstein.
Although not necessary to our decision, it is significant that petitioner made no claim for compensation, temporary *63 or permanent, nor did he file his claim petition until January 28, 1952, more than a month after his separation from employment.
The determination and judgment of the County Court is reversed.