STATE OF NEW JERSEY BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF, v. THE COUNCIL IN THE DIVISION OF RESOURCE DEVELOPMENT OF THE DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT OF THE STATE OF NEW JERSEY, *ET AL.*, DEFENDANTS.

Argued January 25, 1972—Decided February 22, 1972.

Mr. *Morton I. Greenberg,* Deputy Attorney General, argued the cause for defendant Natural Resource Council (*Mr. Joseph M. Clayton, Jr.,* Deputy Attorney General, on the brief; *Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

Mr. *John R. Weigel* argued the cause for defendants Ancorp Realty Co., Inc., *et al.* (*Messrs. Lafferty, Rowe, McMahon and McKeon,* attorneys).

Mr. *Alfred A. Porro, Jr.,* argued the cause for defendants Borough of East Rutherford, *et al.*

Per Curiam. This case involves a tidelands issue. A motion was made for a pretrial ruling upon the meaning of a portion of our opinion in *O'Neill v. State Highway Department,* 50 *N. J.* 307 (1967), for guidance in preparation for trial. Under the unusual circumstances in this area of litigation, a pretrial motion of that kind was appropriate. The trial court entered an order and the Attorney General was granted leave to appeal by the Appellate Division. We certified the matter before argument there.

The pertinent portion of the *O'Neill* opinion reads, 50 *N. J.* at 326–327:

> The proofs suggest questions as to (1) the effect of artificial disturbance of the lands upon the burden of persuasion, * * *
>
> As to [that question], we think the burden should be upon the party who challenges the existing scene, whether the alterations were due to State or to private activity, to satisfy the trier of the facts that the tideland status of the property was changed by such artificial measures. Overall it is probable that Government and the citizen heretofore acted in good faith in dealing with these lands. In the past little attention was paid to the status of most of the marsh or meadow land, probably because their then values were relatively low. Some of these lands were assessed for local taxation. Upon some, we are told, valuable improvements have been erected. It would be too much to ask a party who has dealt with the land, whether the party be the State, its grantee or a private claimant, to bear the burden of proving the tideland status of the property in its undisturbed state. Practical necessity requires that the burden of persuasion be placed upon whoever asserts a tideland status different from that which now appears. *This is not to say that a party aware of a tideland issue can deliberately improve his position by artificial changes on the land. On the contrary, an appropriate inference may be drawn against him if he does not, prior to such activity, obtain and preserve evidence respecting the tideland status of the property.* (Emphasis added.)

The controversy here concerns the language we have italicized.

The trial court held that the inference described in the italicized language "shall be drawn only where such artificial changes on the land have been made by a party after November 6, 1967, on which date the decision in *O'Neill* was entered." The Attorney General complains that an inference may be equally appropriate if the artificial changes antedated

the *O'Neill* opinion, but goes further, and seeks to read *O'Neill* to apply also if it appears that the party "should have been" aware of the tidelands issue when he made the artificial changes. Indeed the Attorney General appears to assume that *O'Neill* would, upon the showing stated in the quoted excerpt, raise a presumption against such a party shifting the burden of proof to him notwithstanding the holding in *O'Neill* that the burden of persuasion is upon the party who attacks the existing scene.

■■ The pertinent passage in *O'Neill* is no more than an application of the general proposition that the behavior of a litigant with respect to relevant evidence may permit an inference that his behavior was prompted by a conscious appreciation that the evidence would or might be hurtful to his position. That proposition applies to sundry situations, involving acts omitted as well as acts done. A conscious awareness of the existence of a dispute with another and a conscious awareness that an act done will destroy evidence or access to evidence are prerequisite for a call upon that doctrine. If the doctrine is invoked, it permits an inference but does not require one to be drawn, depending upon the common sense of a situation. It does not shift the burden of proof, and usually will not relieve the party holding that burden from the obligation of producing some evidence to support his claim. The inference has its role in the evaluation of the evidence the respective parties adduce. See 2 *Wigmore, Evidence* (3d ed. 1940) § 291, *pp.* 182–83, and vol. 9, § 2524, *p.* 441; *McCormick, Evidence* (1954) § 250, *p.* 539; 29 *Am. Jur.* 2d, *Evidence,* § 177, *pp.* 220–21; *cf. Interchemical Corp. v. Uncas Printing and Finishing Co., Inc.,* 39 *N. J. Super.* 318, 329 (App. Div. 1956); *Goldstein v. Continental Baking Co.,* 28 *N. J. Super.* 55, 62 (App. Div. 1953).

■ The Attorney General is quite correct in saying that the proposition in question may theoretically be applied where the artificial change antedated *O'Neill,* for, as we have said, *O'Neill* did not fashion something new. The trial

court may have anticipated an immense difficulty in making that showing in the pre-*O'Neill* scene. Nonetheless a party may try to do so. But success will depend upon proof of the actual awareness we have described, and will not shift the burden of proof or eliminate the need for evidence in support of that burden.

The order is modified accordingly.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*Opposed*—None.