## MARK BEERS ET AL. *v.* BAYLINER MARINE CORPORATION ET AL.
### (15244)

Callahan, Berdon, Norcott, Katz and Palmer, Js.

Argued February 14—officially released May 7, 1996

*Susan King Shaw*, for the appellants (plaintiffs).

*Alison L. Bonds*, with whom, on the brief, was *George A. Dagon, Jr.*, for the appellee (named defendant).

*William F. Gallagher* and *Kurt D. Koehler* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Paul D. Williams* and *Edward F. McHugh* filed a brief for the Connecticut Business and Industry Association as amicus curiae.

BERDON, J. This case raises an issue of first impression for this court—that is, the effect of intentional spoliation of evidence in a products liability case. In August, 1990, the plaintiffs, Marks Beers and John Hornyak,[1] brought an action against the defendant Bayliner Marine Corporation,[2] pursuant to the Connecticut Product Liability Act; General Statutes § 52-572m et seq.; for damages as a result of personal injuries they sustained while traveling in a motor

---

[1] The plaintiff John J. Hornyak died on December 18, 1995. We granted the plaintiffs' motion to substitute as a party plaintiff John M. Hornyak, as executor of the estate of John J. Hornyak, in lieu of John J. Hornyak.

[2] The plaintiffs also brought the action against the defendant Napoli Marine Service, Inc., but subsequently requested that the action against it be dismissed, which motion was granted by the trial court. Hereinafter, references to the defendant are to Bayliner Marine Corporation only.

boat. After the pleadings were closed, the trial court granted the defendant's motion for summary judgment, which was grounded on spoliation of evidence, and rendered judgment thereon. The plaintiffs appealed from the judgment of the trial court and we now reverse the judgment.

The plaintiffs argue that the trial court incorrectly granted the defendant's motion for summary judgment against them, despite alleged factual issues surrounding the disposal of the evidence.[3] To address this claim we look to the pleadings, affidavits, any other relevant proof and review them "in the light most favorable to the nonmoving party."[4]

The plaintiffs alleged the following in their complaint. On July 2, 1986, Beers had purchased from Napoli Marine Service, Inc., a nineteen foot "Capri" bowrider type of outboard motor boat (boat) designed, manufac-

---

[3] The plaintiffs raise two issues on appeal: (1) Whether the trial court incorrectly granted the defendant's motion for summary judgment against both of the plaintiffs, without considering the factual issues surrounding the disposal of the evidence, when one plaintiff innocently disposed of a piece of evidence three to four years after the accident; and (2) whether the trial court incorrectly granted the defendant's motion for summary judgment when the defendant failed to plead spoliation as a special defense. With respect to the second issue, we find no authority that a defendant must plead spoliation as a special defense and therefore reject that claim.

[4] "The standard for appellate review of a trial court decision to grant a motion for summary judgment is well established. Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. . . . [S]ee Practice Book §§ 380 and 381. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Haesche* v. *Kissner*, 229 Conn. 213, 217, 640 A.2d 89 (1994).

tured and distributed by the defendant. On August 30, 1987, Beers was operating the boat on Long Island Sound near the Connecticut shoreline. Hornyak was a passenger in the boat. While Beers was operating the boat, it went out of control and both plaintiffs were injured. The plaintiffs claim that their injuries were caused by the defective condition of the boat, and that the defendant is liable for their injuries under, inter alia, product liability theories of manufacturing defect, design defect, failure to warn of those defects and failure to test adequately the boat.[5]

On November 8, 1994, the defendant moved for summary judgment, claiming that, although Beers' allegedly defective boat was inspected by an expert,[6] Beers had

[5] Paragraph twenty-three of the complaint provides: "The defendant, Bayliner Marine Corporation, is liable and legally responsible to the plaintiffs for their injuries in the following ways:

"(A) That the plaintiffs' injuries and losses were caused by the defective and unreasonably dangerous condition of said boat in that, among other things, it was equipped with an improper shaft in its outboard motor; in that said boat was equipped with a defective steering wheel; in that said boat was equipped with a defective emergency shut down switch; in that said boat was equipped with an improperly wired kill switch; and in that said boat was not equipped with trim tabs.

"(B) The defendant, Bayliner Marine Corporation, was negligent and careless in the design, manufacture, assembly, construction, distribution and/or sale of said boat in that:

"(1) It designed, manufactured, assembled, constructed, distributed and/or sold said boat with defects described above;

"(2) I[n] that it failed to warn consumers such as the plaintiffs of the defective and unreasonably dangerous condition of said boat; and

"(3) It failed to adequately test and investigate the nature, properties and characteristics of said boat before placing it in the stream of commerce to insure that said boat would not operate dysfunctionally.

"(C) That the defendant breached its express and/or implied contract that said boat was of merchantable quality, fit and safe for the purposes for which it was intended."

[6] The insurer of Beers' boat, Covenant Mutual Insurance Company, assigned the technical investigation of the accident to Spectrum Engineering Group, of which Michael F. Miller, a professional engineer, was a partner. Miller submitted a report to Covenant Mutual Insurance Company on November 11, 1987, detailing the results of his inspection and testing.

removed and disposed of the boat's motor before bring-
ing this action in August of 1990. The defendant claimed
that as a result of this spoliation of the evidence it was
stripped of its ability to defend itself. In support of its
motion, the defendant submitted a transcript of Beers'
deposition, wherein Beers conceded that in 1990 or
1991 he had removed the motor from the boat and
subsequently had given it away.[7] The defendant also
submitted an affidavit from its expert, which stated that
he had inspected the boat on September 10, 1992, at
which time the original motor, shaft, emergency shut-
down switch and kill switch had been removed or
replaced, precluding his formation of an opinion as to
whether those parts were defective. A second affidavit
in support of its motion for summary judgment was
also submitted by the defendant's claims adjuster,
which stated that although the adjuster had attempted
repeatedly to arrange for an inspection of the boat from
July 21, 1988, to November 29, 1989, an inspection was
never scheduled by the plaintiffs' attorney.

In opposition to the defendant's motion for summary
judgment, the plaintiffs filed an affidavit by their attor-
ney in which he stated that he had been contacted by the
defendant's claims adjuster "on one or two occasions
during 1988 and/or 1989, indicating that [the claims
adjuster] wanted to take pictures of the boat which is
the subject of this lawsuit." The plaintiffs' attorney
added the following: "My response was that if he would
give me a couple of dates, I would arrange to have
the boat made available. He never contacted me with
specific dates on which to view the boat or to take
pictures of it. I never received any follow-up correspon-
dence (or correspondence of any kind) from [the claims

---

[7] Beers, at his deposition, testified that he retained possession of the boat
and its parts until the summer of 1990 or 1991, at which time he replaced
the motor and kept it at his home "for a time" before giving it to a friend
of his son "the following winter or early the following year."

adjuster] . . . relative to inspecting the boat. I never refused to cooperate in arranging for an inspection of said boat." The plaintiffs' attorney also stated in his affidavit that a subsequent request was made to inspect the boat in June of 1991, but the adjuster did not respond to his requests for specific dates, and that no further requests for inspection were made until the late summer of 1992, at which time the defendant's expert inspected the boat.

The trial court found that the defendant was entitled to judgment as a matter of law and rendered summary judgment against the plaintiffs. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The issue of spoliation of evidence has not previously come to this court in the context of a civil case.[8] The

---

[8] We recently decided the issue of spoliation of evidence in the context of a criminal case. See *State v. Morales*, 232 Conn. 707, 657 A.2d 585 (1995). In *Morales*, the police had seized the victim's leather jacket as evidence of a sexual assault because of alleged semen stains on it. Following repeated requests by the victim, the police returned the leather jacket to her. This return took place prior to the defendant's arrest for, inter alia, sexual assault. At trial, the defendant moved to dismiss the charges against him based on the failure of the police to preserve the victim's jacket as evidence. Id., 712. The defendant "argued that the fact that the jacket was unavailable had irreparably harmed his ability to defend himself . . . ." Id. We noted that "[t]he defendant did not argue that the police, in returning the jacket to the victim, had acted in bad faith or that they had any motive for doing so other than accommodating the victim." Id. We then employed a balancing test as required by the due process clause of our state constitution to determine "whether the failure of the police to preserve potentially useful evidence had deprived a criminal defendant of due process of law . . . ." Id., 719. The several factors to be weighed included " 'the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence.' " Id., 719-20, quoting *State v. Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Thus, even

defendant argues that it is entitled to summary judgment because of Beers' intentional spoliation of evidence. We decline to adopt this blanket approach,[9] which is grounded on punishing the spoliator.[10] Rather, we adopt the rule of the majority of the jurisdictions that have addressed the issue in a civil context, which is that the trier of fact may draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it. See, e.g., *Wong* v. *Swier*, 267 F.2d 749, 759 (9th Cir. 1959) (inference arises against parties responsible for spoliation); *Williamson* v. *Superior Court of Los Angeles County*, 21 Cal. 3d 829, 835 n.2, 582 P.2d 126, 148 Cal. Rptr. 39 (1978) (in determining what inferences to draw from party's wilful suppression of evidence, code of evidence permits trier of fact to consider, among other things, party's failure to explain or to deny evidence against him or party's wilful suppression of evidence); *Rodriguez* v. *Schutt*, 896 P.2d 881, 884 (Colo.

in the context of criminal cases, we do not take an "all or nothing" approach to the spoliation issue.

[9] We note that some jurisdictions have excluded a spoliator's expert testimony as a sanction for spoliation of evidence. See *American Family Ins. Co.* v. *Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624, 627–29, 585 N.E.2d 1115 (1992) (sanction against plaintiffs for allowing most crucial evidence in case to be destroyed was exclusion of their expert witness or related evidence from trial; summary judgment subsequently rendered in favor of defendant based on plaintiffs' inability to use any evidence concerning car's condition); *Nally* v. *Volkswagen of America, Inc.*, 405 Mass. 191, 197–98, 539 N.E.2d 1017 (1989) (where expert has removed evidence that may be material to litigation, expert should be precluded from testifying); *Fire Ins. Exchange* v. *Zenith Radio Corp.*, 103 Nev. 648, 651, 747 P.2d 911 (1987) (party responsible for spoliation barred from presenting testimony of expert witness resulting in summary judgment for other party). Alternatively, dismissal of an action has been held to be an appropriate sanction. See *Stubli* v. *Big D International Trucks, Inc.*, 107 Nev. 309, 313, 810 P.2d 785 (1991). We also reject these blanket approaches, which appear to be similarly grounded on punishing the spoliator.

[10] Even if we were inclined to agree with the trial court, summary judgment should not have been rendered against Hornyak, who did not, according to the record before us, participate in the spoliation of the evidence.

App. 1994), cert. granted, 199 Colo. LEXIS 381 (Colo. May 22, 1995) (trial court clearly has power to employ adverse inference as sanction for intentional destruction of evidence); *Collins* v. *Throckmorton*, 425 A.2d 146, 150 (Del. 1980) (adverse inference allowed); *State* v. *Langlet*, 283 N.W.2d 330, 333 (Iowa 1979) (fact finder may draw inference that evidence destroyed was unfavorable to party responsible for its spoliation); *Larsen* v. *Romeo*, 254 Md. 220, 228, 255 A.2d 387 (1969) (generally, inference arises from suppression or destruction of evidence by litigant that such evidence would be unfavorable to his case); *DiLeo* v. *Nugent*, 88 Md. App. 59, 71, 592 A.2d 1126, cert. granted, 325 Md. 18, 599 A.2d 90 (1991) (adverse inference appropriate where spoliation is unexplained and intentional); *Trupiano* v. *Cully*, 349 Mich. 568, 570, 84 N.W.2d 747 (1957) (intentional spoliation raises inference against party that caused spoliation); *Fonda* v. *St. Paul City R. Co.*, 71 Minn. 438, 452, 74 N.W. 166 (1898) (unfavorable inference arises from spoliation or suppression of evidence); *Brown* v. *Hamid*, 856 S.W.2d 51, 55 (Mo. 1993) (spoliation "without a satisfactory explanation gives rise to an inference unfavorable to the spoliator"); *State* v. *Council in Division of Resource Development of the Dept. of Conservation & Economic Development*, 60 N.J. 199, 202, 287 A.2d 713 (1972) (*Division of Resource Development*) (adverse inference permitted); *McHugh* v. *McHugh*, 186 Pa. 197, 201, 40 A. 410 (1898) (spoliation of evidence by party gives rise to adverse inference); *F. R. Patch Mfg. Co.* v. *Protection Lodge No. 215, International Assn. of Machinists*, 77 Vt. 294, 329, 60 A. 74 (1905) (inference arises from spoliation of evidence); *Jagmin* v. *Simonds Abrasive Co.*, 61 Wis. 2d 60, 81, 211 N.W.2d 810 (1973) (operation of maxim omnia praesumuntur contra spoliatorem allows for adverse inference); *Hay* v. *Peterson*, 6 Wyo. 419, 433–39, 45 P. 1073 (1896) (spoliation by claimant raises inference against his claim);

29 Am. Jur. 2d, Evidence § 244 (1994) ("[i]t is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises . . . an inference that this evidence would have been unfavorable"). The rule that we adopt, however, requires some elaboration.

More specifically, we conclude that an adverse inference may be drawn against a party who has destroyed evidence only if the trier of fact is satisfied that the party who seeks the adverse inference has proven the following. First, the spoliation must have been intentional. *Akiona* v. *United States*, 938 F.2d 158, 161 (9th Cir. 1991), cert. denied, 503 U.S. 962, 112 S. Ct. 1567, 118 L. Ed. 2d 212 (1992); *Bihun* v. *AT&T Information Systems, Inc.*, 13 Cal. App. 4th 976, 994, 16 Cal. Rptr. 2d 787 (1993); *Collins* v. *Throckmorton*, supra, 425 A.2d 150; *State* v. *Langlet*, supra, 283 N.W.2d 333; *Larsen* v. *Romeo*, supra, 254 Md. 228; *DiLeo* v. *Nugent*, supra, 88 Md. App. 71; *Trupiano* v. *Cully*, supra, 349 Mich. 570; *Brown* v. *Hamid*, supra, 856 S.W.2d 56–57; *Jagmin* v. *Simonds Abrasive Co.*, supra, 61 Wis. 2d 81. By this, we do not mean that there must have been an intent to perpetrate a fraud[11] by the party or his agent who destroyed the evidence but, rather, that the evidence had been disposed of intentionally and not merely destroyed inadvertently. *Collins* v. *Throckmorton*, supra, 150 (adverse inference not appropriate because evidence was lost through no fault of plaintiff); *Haynes* v. *Coca Cola Bottling Co. of Chicago*, 39 Ill. App. 3d 39, 46, 350 N.E.2d 20 (1976) (adverse inference against plaintiff did not arise because disposal of evidence was inadvertent); *State* v. *Langlet*, supra, 333 (spoliation

---

[11] Some courts have required such intent, or other evidence of bad faith. See *Brown & Williamson Tobacco Corp.* v. *Jacobson*, 827 F.2d 1119, 1134 (7th Cir. 1987), cert. denied, 485 U.S. 993, 108 S. Ct. 1302, 99 L. Ed. 2d 512 (1988); *State* v. *Langlet*, supra, 283 N.W.2d 333 (" 'circumstances of the act [of spoliation] must manifest bad faith' "). We leave to another day the determination of the appropriate remedy when the spoliator's intent had been to perpetrate a fraud, an issue not presently before us.

inference not appropriate when destruction is not intentional or is merely matter of routine procedure); *Division of Resource Development,* supra, 60 N.J. 202 (conscious awareness of existence of dispute and conscious awareness that act performed will destroy evidence or access to evidence allow for adverse inference).

Second, the destroyed evidence must be relevant to the issue or matter for which the party seeks the inference. For example, the spoliation of a machine may raise an adverse inference with respect to a claim that that particular machine was defective, but such an inference may not be drawn with respect to a claim based upon design defect when the destruction would not hinder the defense. See *Donohoe* v. *American Isuzu Motors, Inc.,* 157 F.R.D. 238, 244 (M.D. Pa. 1994) ("[A]ny other [seat] belt of the same model will possess the same inherent defect and can be tested and examined for defects in the same manner as the [plaintiff's] belt. Defendants will gain no more information as to the existence or non-existence of a design defect from testing the [plaintiff's] belt than they will from testing exemplar belts.").

Third, the party who seeks the inference must have acted with due diligence with respect to the spoliated evidence. For example, the spoliator must be on notice that the evidence should be preserved. See *Division of Resource Development,* supra, 60 N.J. 202. If the spoliated evidence was necessary for inspection or testing, the party who seeks the inference must have taken all appropriate means to have the evidence produced. This may include, if necessary, an attempt to obtain a court-ordered inspection.[12] See *Jones* v. *Resorcon,* 604 So. 2d 370, 373 (Ala. 1992).

---

[12] We note that the defendant in this case did not seek to compel disclosure, move for summary judgment or seek any other sanction until eight years after the incident, five years after the action was instituted and six months after the pleadings were closed.

Finally, the jury, if it is the trier of fact, must be instructed that it is not required to draw the inference that the destroyed evidence would be unfavorable but that it may do so upon being satisfied that the above conditions have been met. See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674–75, 165 A.2d 598 (1960) (jury was entitled but not required to draw adverse inference); *Division of Resource Development*, supra, 60 N.J. 202 (adverse inference permitted but not required).

It must also be noted that the inference does not "supply the place of evidence of material facts and does not shift the burden of proof so as to relieve the party upon whom it rests of the necessity of establishing a prima facie case, although it may turn the scale when the evidence is closely balanced." (Internal quotation marks omitted.) *Doty* v. *Wheeler*, 120 Conn. 672, 679, 182 A. 468 (1936); see *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 675; *Larsen* v. *Romeo*, supra, 254 Md. 228 (adverse inference does not amount to substantive proof and cannot take place of proof of fact necessary to other party's case); *DiLeo* v. *Nugent*, supra, 88 Md. App. 71 (adverse inference that destroyed evidence would have been unfavorable does not itself amount to substantive proof that evidence is unfavorable); *Burkowske* v. *Church Hospital Corp.*, 50 Md. App. 515, 523–24, 439 A.2d 40 (1982) (same); *Jakel* v. *Brockelman Bros., Inc.*, 91 N.H. 453, 455, 21 A.2d 155 (1941) (proof of alleged suppression of evidence cannot take place of proof of facts necessary to recovery); *F. R. Patch Mfg. Co.* v. *Protection Lodge No. 215, International Assn. of Machinists*, supra, 77 Vt. 329 (inference "does not relieve the other party from introducing evidence tending affirmatively to prove his case so far as he has the burden"); *Jones* v. *Lamm*, 193 Va. 506, 510–11, 69 S.E.2d 430 (1952) (mere fact that evidence was

destroyed by defendant is not proof of primary negligence of defendant even if it is assumed that such destruction was intentional); *Jagmin* v. *Simonds Abrasive Co.*, supra, 61 Wis. 2d 81 (where destruction of evidence gives rise to adverse inference, inference cannot carry other party's burden of proof); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.2.3.[13]

Accordingly, we conclude in this case that the trial court improperly rendered summary judgment. This, however, is not to say that summary judgment in favor of a defendant may never be appropriate. If, as a result of the innocent destruction of evidence, whether intentionally[14] or inadvertently, the plaintiffs as a matter of law could not sustain their burden of proving liability, then summary judgment may be appropriate. For example, in a case such as this one, if the plaintiffs' claim had been limited to a defect in the motor that could be supported only by expert testimony based upon a visual inspection, and the evidence had not been inspected by an expert prior to spoliation, then summary judgment may be appropriate, not as a penalty, but because the plaintiffs would not be able to prove liability as a matter of law.

This, however, is not the case before us. The motion for summary judgment was granted by the trial judge solely on the basis of the defendant's argument that it was the appropriate remedy for penalizing the plaintiffs

[13] Professor Tait points out: "Most inferences are affirmative in the sense that they tend to prove particular facts. In some situations, however, the inference may be a negative one. For example, the failure to produce evidence that would naturally be favorable creates an inference that such evidence would, in fact, have been unfavorable to the party's cause. . . . Such negative inferences cannot supply proof of any particular fact. Accordingly, negative inferences do not help a party to establish a prima facie case and can be used only by the trier in weighing the evidence and determining the ultimate burden of persuasion." C. Tait & J. LaPlante, supra, § 8.2.3.

[14] See footnote 11 (issue of fraud is not before us).

for disposing of the boat's motor. The defendant never claimed that the plaintiffs, as a result of the spoliation of the motor, would be unable to prove their case. Indeed, the record indicates that the plaintiffs' product liability claims were in part based upon design defects, for which examination of any similar model of motor may suffice. Furthermore, the record indicates that an expert had examined the motor prior to its disposal and that he had prepared a report with respect to the motor's alleged defects.[15]

The judgment is reversed and the case is remanded to the trial court for further proceedings.

In this opinion the other justices concurred.