[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 5, 1996
This is a product liability action commenced on February 8, 1994 seeking damages for personal injuries allegedly suffered by plaintiff Donna MacLauchlin when the transmission of a leased Geo Prizm automobile she was driving suddenly locked causing the automobile to stop suddenly. The second revised complaint filed on September 25, 1995 seeks damages from the distributor, General Motors, Inc. ("GM"), the manufacturer, New United Motor Manufacturing, Inc ("NUMMI"), and lessor, Regency Coachworks, Inc. ("Regency").
On September 22, 1995, Regency filed a motion for sanctions against GM and NUMMI on the ground of intentional spoliation of evidence, seeking a default against the codefendants. Alternatively, it seeks: (a) an order barring introduction of any evidence regarding cause of defect, including but not limited to precluding expert testimony by the defendants; (b) an order that the jury receive a charge as to spoliation inference; and (c) an order awarding costs as a result of the defendants' spoliation, including but not limited to reasonable attorneys fees, discovery costs, expert fees, etc. On September 27, 1995, MacLauchlin filed a similar motion for sanctions against GM and NUMMI based on spoliation of evidence.
 I.
The circumstances leading to these motions may be summarized as follows:
Subsequent to the accident on August 25, 1992 Regency, which had loaned the vehicle to MacLauchlin, towed the vehicle to CT Page 5204-SSS Stanley Parker Chevrolet ("Stanley Parker"), a GM "certified service manager dealership. " Pursuant to GM's written policy manual, entitled "Accredited Dealership/Certified Service Manager Program Guides," if a GM part is deemed defective, a claim must be submitted to Chevrolet. In addition, the "dealer is to retain for inspection all warranty party for a minimum period of thirty days from date of claim submission . . . or until scrapped by a Chevrolet representative, whichever occurs first." "Parts not requested within the thirty day retention period are to be damaged beyond further use and scrapped by the Dealer. However, any parts not scrapped by the Dealer following the expiration of the retention period and still retained at the dealership are subject to inspection and verification by Chevrolet personnel." Allegedly in keeping with this policy, Stanley Parker discarded the transmission of the vehicle involved in plaintiff's accident.
 II.
Movants claim sanctions under Practice Book § 231. That rule permits the court to order sanctions if a party fails to comply with certain court orders, answer interrogatories or respond to requests for production and has been interpreted to permit sanctions for spoliation of evidence. Curtis v. NortheastNew Britain el al, Judicial District of Hartford-New Britain at Hartford CV91-503985, 12 CONN.L.RPTR. 358, (August 9, 1994) (Wagner, J.). No decision has been drawn to our attention applying sanctions under PB § 231 for spoliation of evidence occurring prior to the commencement of an action as in this case.
However, the recent Supreme Court case of Beers, et al v.Bayliner Marine Corp. et al, 236 Conn. 769 (1996) in denying a sanction of summary judgment for spoliation of evidence, without any reference to CPB Rule § 231, set up a three prong test which had to be satisfied before an adverse inference could be drawn against a party who has destroyed evidence. First, the spoliation must be intentional. Second, the destroyed evidence must be relevant to the issue or matter for which the party seeks an inference. Third, the party who seeks the inference must have acted with due diligence with respect to the spoilated evidence.
It is clear that the first two prongs of the rule are satisfied in this case; as to the third prong, both GM and NUMMI assert that Stanley Parker and therefore GM and NUMMI "did not know that the transmission which Regency wanted removed from the Geo Prizm had caused any injuries or might become of the subject CT Page 5204-TTT of damage claims or legal proceedings."
It appears that the plaintiff MacLauchlin retained an attorney shortly after the accident who wrote to Regency on September 25, 1992 advising Regency not to destroy the vehicle or any part of it because of a pending product liability action and that any destruction of such evidence would be viewed as "intentional spoliation." GM and NUMMI claim that neither they or Stanley Parker ever received this notice and that they first became aware of the pending action and the relevance of the transmission when they were served in early 1994, long after the transmission had been destroyed. GM and NUMMI present a long history of the vehicle's history prior to the accident and claim that Stanley Parker replaced and discarded the defective transmission under the warranty coverage without any notice of the accident or the request to preserve the transmission. Regency and the plaintiff offer no evidence to contradict these claims but contend that the defendants should have known that When a vehicle's transmission suddenly locks, there is a potential for litigation. However, Regency and MacLauchlin offer no basis for their contention that GM and NUMMI knew that the vehicle's transmission suddenly locked. In contrast, GM and NUMMI offer the deposition testimony of Charland, Regency's owner and operator, to demonstrate that they were only told that the vehicle "had an internal transmission problem." Movants have failed to show that GM and NUMMI knew of MacLauchlin's alleged injuries or the possibility of a lawsuit at the time that the transmission was discarded.
In explaining the third prong set forth in Beers et al v.Bayliner Marine Corp. et al, the Supreme Court stated: "For example the spoilator must be on notice that the evidence should be preserved," § 236 Conn. 778. This requirement is in accord with leading federal cases requiring that a spoliator know or should have known that the spoiled evidence would be material in a contemplated action. Iowa Ham Canning Inc. v. Haudtmann, Inc.,870 F. Sup. 238 (N.D. Ill. 1994); Baliotis v. McNeil, 870 F. Sup. 1285
(M.D. Pa. 1994). Since the movants failed to exercise due diligence to notify the party in possession or control of the automobile of the accident of pending litigation, the test set forth by our Supreme Court has not been met.
 III.
While GM and NUMMI claim that the transmission was discarded CT Page 5204-UUU pursuant to GM's written policy, Regency and MacLauchlin contend that this policy is self-serving and intended to preclude inspection of the defective part by anyone but GM's service dealerships. In opposition, GM and NUMMI argue that "GM's thirty-day policy reflects GM's concern that unusable and potentially unsafe warrantied parts not find their way back into other vehicles. The longer such parts remain on dealers' shelves, the more likely it is that someone might attempt to re-use the parts." GM and NUMMI also note that "GM's parts disposal policy applies only to warrantied parts, and not to parts which are likely to have been involved in an accident." Therefore, if Regency had notified Stanley Parker or GM that the vehicle had been in an accident, the transmission would not have been covered by warranty and, accordingly, would not have been discarded.
The general rule stated in 29 Am.Jur.2d Evidence § 245 (1994) is that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable. Such a presumption or inference arises, however, only where the act was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."
Although Regency and MacLauchlin contend that the effect of GM's policy is self-serving, they do not claim that GM instituted the policy in an effort to avoid liability for allegedly defective parts. Moreover, Regency and MacLauchlin have not rebutted GM's claim that the purpose of its policy is to prevent re-use of unusable and potentially unsafe warrantied parts.
This appears to be a case where the transmission was routinely discarded pursuant to a justified written policy and movants have not established any element of bad faith on the part of GM or NUMMI.
Motion for Sanctions Denied.
WAGNER, J.