[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 25, 1997
The plaintiff was an experienced motor vehicle mechanic when in 1986 she was working on a truck brought for repair to the shop where she was employed. The truck would not start properly. The plaintiff started the ignition which apparently engages something called a "glowplug" which causes the vehicle to operate. When she did this the truck, whose clutch was not engaged, lurched backwards causing her injury. She then filed suit against the truck manufacturer under the Products Liability Act § 52-572m
et seq.
1.
The defendant manufacturer has moved for summary, judgment arguing that in the absence of both the allegedly defective product and expert testimony the plaintiff cannot make out a prima facie case. Furthermore, the defendant argues the doctrine of res ipsa loquitur does not supply evidence and therefore the plaintiff cannot avoid summary judgment on the facts of this case.
The defendant has referred to the case of Beers v. BaylinerMarine Corp., 236 Conn. 769 (1996). That case specifically dealt with an issue of first impression — the effect of intentional spoliation of evidence in a products liability case,id. p. 770. Our court adopted the majority rule which is that the trier of fact may draw adverse inference from the intentional spoliation of evidence against the party who destroyed the evidence, id. p. 775, also see discussion at pp. 777-79.
The case before this court is not one of intentional spoliation — evidence has not been "destroyed" by the plaintiff intentionally. The evidence was not even "inadvertently" destroyed by the plaintiff — she was injured by the alleged unexpected movement of a truck that was merely being serviced by her employer. The defendant, however, relies heavily on dicta in Beers at page 780:
 If, as a result of the innocent destruction of evidence, whether intentionally or inadvertently, the plaintiffs as a matter of law could not sustain their burden of proving liability, then summary judgment may be inappropriate. For example, in a case such as this one, if the plaintiffs' claim had been limited to a defect in the motor that could be supported only by expert testimony based upon a visual inspection, and the evidence had not been inspected by an expert prior to spoliation, then summary judgment may be appropriate, not as a penalty, but because the plaintiffs would not be able to prove liability as a matter of law.
(Emphasis added.) CT Page 3047
The question becomes what is the bearing of this comment on the case before the court. The discussion in Prosser Keeton onTorts, 5th ed. At § 99, pp. 695 et seq. is helpful. When a plaintiff alleges a flaw in a product there are several evidentiary categories of cases. Where an identifiable, specific flaw is claimed usually the testimony of experts is necessary to show the probable causes of the flaw and, as Prosser says, trace the flaw to the target defendant. Beers appears to be a case where such a claim was made, see footnote 5, 236 Conn. at page 772 — specific defects are alleged — an improper shaft in the outboard motor of a boat, a defective steering wheel, a defective emergency shut down switch, an improperly wired kill switch. It was in the context of such a case that Justice Berdon made his remarks.
But the case now before the court can be said to fall into one or another of two evidentiary categories which are analytically related, often factually related and have similar consequences as to proof problems. Both are strict liability torts, are generally referred to as malfunction cases, and do not depend on a negligence theory. One type of case is noted in Prosser at page 696 (his second category) and the leading caseHenningsen v. Bloomfield Motors, Inc., 161 A.2d 69 (N.J., 1960). In that type of case as Prosser notes a user of the product testifies "that a component part malfunctions, but for some reason, either because the accident destroys the evidence or the product disappears, there is no evidence as to an identifiable flaw that could have caused the accident," Prosser at § 99, page 696. In Henningsen, the court permitted the inference to be drawn of some kind of flaw in the steering mechanism of the car,161 A.2d at pp. 97-98. In such cases, since the product is no longer available for inspection and the inference based on circumstantial evidence is permitted without predicate of expert testimony but is just based on the nature of the accident, it seems to go without saying that expert testimony need not be produced by the plaintiff to make out a prima facie case. TheHenningsen court seemed to underline this when it said at page 98: "It may be conceded that the opinion of the automobile expert produced by the plaintiffs in the present case was not entitled to much probative force."
Another closely related category of case is exemplified by two Connecticut cases, Liberty Mutual Insurance Co. v. SearsRoebuck Co., 35 Conn. Sup. 687 (1979); Living Learning CenterInc. v. Griese Custom Signs Inc., 3 Conn. App. 661 (1985). Like CT Page 3048 the Henningsen type of case the product is often unavailable for inspection and the focus is on the malfunction itself that the courts reason would not happen in the ordinary course unless the product was defective. In other words, we are dealing here with circumstantial evidence rules very liberally applied against manufacturers because of social policy reasons — the relative sophistication and litigation strengths of product makers as opposed to consumers.
In Liberty Mutual a color television caught fire and damaged the plaintiff's property. It does not appear that any experts were called. The court at pages 690-91 said the focus was on the product as a whole not its component parts. A specific defect need not be shown as long as there is some unspecified dangerous condition: "whether a product is unreasonably dangerous is a question of fact to be determined by the jury. In determining this question the jury can draw their own conclusions as to the expectations of the ordinary consumer and the common knowledge in the community . . . The jury may rely on circumstantial evidence
to establish the dangerous condition of the product" . . . In the absence of other identifiable causes, evidence of malfunction issufficient evidence of a defect under § 402 A (of Restatement (Second)) Torts," 35 Conn. Sup. at page 691 (emphasis added — so much for the need for expert testimony). The case of Living Learning Center relied for its ruling on Liberty Mutual; see3 Conn. App. at pages 664-65.
Cases in other jurisdictions espousing this malfunction theory of liability have also found that a prima facie case of products liability can be made out despite the fact that no expert testimony was presented of a specific defect; Tweedy v.Wright Ford Sales Inc., 357 N.E.2d 449, 451 (Ill. 1976); Troy etal v. Kampgrounds of America, Inc., 581 A.2d 665, 666, 668
(1990); Jaquimin v. Simonds Abrasive Co., 211 N.W.2d 810, 814, 817
(Wis. 1973), Cozine v. Hawaiian Catamaran Ltd., 412 P.2d 669, 676
(Haw., 1966).
Although there is some confusing language in the cases about the applicability of res ipsa loquitur to strict liability cases, it is an analytical red herring on the issue of whether failure to produce expert testimony should mean that a prima facie case cannot be established in one of these strict liability malfunction theory of liability cases. Res ipsa loquitur relates to cases involving negligence and has no application to cases where a strict liability theory is advanced. Tresham v. FordCT Page 3049Motor Co., 79 Cal.Rptr. 883, 885 (Cal. 1969). Strict liability theory "has removed the necessity for showing circumstances justifying an inference of negligence," Prosser, § 99, page 696. The California Courts have said that: "When a party relies on the rule of strict liability the requirement of showing a defect cannot be satisfied by reliance on the doctrine of res ipsa loquitur," Tresham at page 886.
But cases that accept the malfunction theory of strict liability and hold that "Whether a product is unreasonably dangerous is a question of fact to be determined by a jury" and that "in determining this question the jury can draw their own conclusion as to the expectations of the ordinary consumer and the knowledge common in the community at large," Liberty Mutual
at 35 Conn. Sup. page 91, and further do not require expert testimony for a prima facie case, do not ipso facto accept full blown res ipsa loquitur doctrine in order to reach that conclusion. They simply rely on the procedural effects of circumstantial evidence applied to this particular class of cases. Subject to two qualifications which will be discussed shortly in most jurisdictions purely circumstantial evidence of a defect will suffice to take the case to a jury. Some of these cases confuse the issue by saying these circumstantial evidence rules are akin to res ipsa loquitur, call them an instance of that doctrine, have the same or similar effect as that doctrine, et cetera. But the point is the circumstantial evidence rules established in these malfunction theory cases merely establish a prima facie case and permit but do not require a finding for the plaintiff even in the absence of contrary evidence. Thus a defendant need not come forward with rebuttal evidence to avoid a directed verdict. In other words, the burden of production does not shift and the defendant manufacturer faces no burden of securing often unobtainable rebuttal evidence. The defendant remains free to argue that although the accident in question was one that does not normally occur in the absence of a defect, there was no defect here even if the defendant cannot otherwise account for the accident. Jenkins v. Whittaker Corp.,785 F.2d 720, 733 (CA9, 1986); see also the discussion in Stewart v. FordMotor Co., 553 F.2d 130, 138 (CA D.C., 1977) (Skelly, Wright J.).
What the California courts object to as evidenced in Tresham
is application in these cases of a variation of negligence res ipsa loquitur doctrine that was never operative in our state in any event. Some states hold apparently that where res ipsa applies a presumption of negligence is established and the burden CT Page 3050 of proof shifts to the defendant.
If evidence of a malfunction were to be given such probative force that it raised the presumption of a defect, to avoid a directed verdict a defendant manufacturer would have to come forward with evidence that a product is not defective or did not proximately cause the injury. This would be unfair where the product has been destroyed or damaged so that proof of absence of a defect is virtually impossible. In effect defendants would be made insurers.
But all of this says nothing about whether expert testimony should be required in these malfunction cases where the instructions to the jury on how they are to treat circumstantial evidence are fair to both sides and do not create presumptions in favor of plaintiffs and shift burdens to the defendant.
In fact, given the underlying premise of the malfunction theory, it would be unfair to injured plaintiffs to require expert testimony in these cases for the same reason it would be unfair to manufacturers to have to rebut presumptions of liability — often in these cases the product is destroyed, damaged, or is otherwise not available in situations where spoliation rules don't apply — how is the plaintiff to produce expert testimony? Such a requirement in effect would subvert the goals sought to be achieved by expanding strict liability doctrine to accommodate the malfunction theory where no specific defect is claimed.
Turning to the facts of this case the court will address the issue as to whether the plaintiff has made out a prima facie case under the malfunction theory of strict liability. In her complaint and at her deposition the plaintiff claims that as she reached into the vehicle she was working on and turned the ignition on to engage the glow plug (a pre-ignition starting procedure), the vehicle's engine suddenly and without warning started and caused the vehicle to jolt backwards and begin to travel in reverse. This resulted in injury to the plaintiff. In the complaint, the plaintiff alleges in paragraph 5(a) that the truck was in a dangerous and defective condition and could not be used without unreasonable risk of injury. At the deposition, the plaintiff said in response to a question as to what General Motors might have done to create a malfunction in this vehicle:
A. Well, maybe it was an ignition switch that was CT Page 3051 not working properly, or maybe it was a . . . I really don't know. I would say it probably was a product defect.
That this is a typical malfunction theory case is underlined by the testimony at page 59 where the plaintiff says that when she turned on the ignition to engage the glow plug "the thing just took off" although "the clutch was not engaged" and "there was nobody inside the cab." This is evidence of a malfunction which the plaintiff is presenting to circumstantially prove the defect. Vehicles that have their ignition turned on when the clutch is not engaged do not suddenly take off in reverse. That would be unsafe for drivers and mechanics and a jury might well conclude it is unreasonably dangerous and is therefore a defect. But in addition to evidence of a defect there are other matters the plaintiff must establish before a prima facie case is made out.
2.
Most jurisdictions hold, like ours, that purely circumstantial evidence of a defect is enough to take a ease to a jury provided the plaintiff has introduced evidence as to two other matters: (1) "plaintiff must present evidence which would tend to negate causes for an accident other than a defect in the product; and (2) "plaintiff must present proof which would suggest that whatever defect might have existed was one introduced into the product by the defendant." Jenkins v. Whittaker Corp., supra, at 785 F.2d, page 732 Stewart v. Ford Motor Corp., supra at 553 F.2d, page 137.
The Stewart case at pages 137-38 notes that: "The quantum of proof that must be adduced to meet these two specific requirements is not great. The plaintiff's own testimony is sufficient and `the burden on the plaintiff is only to negate those causes not in the control of the defendant which might reasonably have led to the accident.'" The Stewart court goes on to say that courts have refused to allow cases of this type to go to the jury "only in the most egregious instances of failure of proof on these two points."
These proof requirements, however, are necessary because in these product liability cases there must be evidence that there was a defect in the product at the time of its sale.
The Liberty Mutual case at 35 Conn. Sup. page 693. phrases the CT Page 3052 issue in this way:
 Where the evidence of a defect is wholly circumstantial and consists of the malfunction itself, however, the likelihood that the defect existed at the time of sale is more speculative. That is so because where a specific defect in design or manufacture is proved, the jury are presented with evidence of the condition of the product before it left the manufacturer's or seller's hands. No such evidence is put forward when the defect is circumstantially proved from the fact of the malfunction. This lack of evidence of the existence of a specific defect, though not fatal to the plaintiff's case, does require that the evidential bridge linking the defect with the time of sale be more substantial than might otherwise be appropriate. Although the amount of time between purchase and injury is a significant factor in the inferential equation, it is not the only one. To it must be added other factors that might account for an alteration of the product after sale, including improper use, modification, tampering or improper maintenance.
In this case, at her deposition the plaintiff who as a mechanic worked on the truck that injured her stated that she spoke to the people at the repair shop after the incident who stated that no similar incident involving this truck had occurred. There were new parts added to the truck but the plaintiff said they were properly installed and seemed to be up to manufacturer's specification. The truck was built in 1982 but the accident occurred in 1986 and the court has no idea of the operable life of vehicles such as this. The plaintiff was an experienced mechanic and there is no indication that the work she was performing on the truck immediately prior to the incident was done in an improper manner. At some point prior to the accident, she completely inspected the vehicle and its parts. She inspected inside the vehicle prior to the incident and determined there were no after market products installed, she did a thorough under the hood check. There is no evidence of improper maintenance or use of this vehicle by the plaintiff as a mechanic.
In light of the comments in Stewart and at this stage of the proceedings, the court does not think it would be appropriate to grant the summary judgment motion. Enough has been set forth to CT Page 3053 at least make a prima facie case linking the defect to the time of sale.
Also, since the court will not grant the summary judgment motion because it has found that a prima facie case has been made under the malfunction theory of strict liability, it will not review the other claims of the plaintiff — that the defendant violated its duty to warn or that it neglected to install a failsafe device in the vehicle. The motion for summary judgment is denied.
CORRADINO, J.
CT Page 3042