WILSON, Judge.
This is an action seeking damages for personal injuries allegedly sustained by the plaintiff in a fall on premises owned and controlled by the defendant. The plaintiff alleges in her notice of claim that on October 10, 1998, at 11:30 P.M. she was 2-3 feet into the entry walkway of the *456 “high stakes limit” dining room. She alleges that grease'on a wooden floor in the above mentioned location caused the claimant to fall and sustain personal injuries.
In her complaint she alleges that she was entering the “high stakes limit” dining room of the premises, following a maitre’d into the dining room when at a point approximately 2-3 feet into the room she was caused to slip and fall upon grease present on the wooden floor on the walkway into the dining room thereby sustaining the injuries and losses described below. She alleges that the occurrence was due solely and wholly to the carelessness and negligence of the defendant in and about the want of due and proper care In the operation, maintenance and control of the aforesaid premises. She alleges numerous specific grounds of negligence.
She also alleges that the defendant had actual notice of the said defective condition in that the defendant by its agents, servants or employees created the defective condition complained of and/or that the said defective condition had existed for a sufficient period of time so that the defendant, its agents, servants and/or employees knew or, in the exercise of reasonable care, should have known of the existence in time to have taken steps to remedy the same and to have averted this occurrence. She alleges that as a result of the occurrence she sustained numerous personal injuries.
The defendant admits that the plaintiff was a patron and invitee lawfully upon the premises, and that the premises were owned, operated, maintained and controlled by the defendant. The defendant denies the allegations as to the cause of the injury, and as to negligence on the part of the defendant. The defendant as a special defense alleged that any injuries, losses or damages sustained by the plaintiff were caused by her own negligence and/or carelessness in failing to watch where she was walking and failing to use her senses in a reasonable and prudent manner. The plaintiff denies this special defense.
Upon the trial of this matter the plaintiff testified that on the aforesaid occasion she took the bus to the casino with her husband and two friends. She went to the buffet. (The correct name of the buffet, as the evidence at the trial disclosed, is the “Seasons Buffet”.) She alleges that she walked down a long corridor, was met by the maitre’d, took 4-5 steps following the maitre’d, and fell. She described the floor where she fell as “shiny”. She was first in line in her group and slipped and fell on her back. Her right foot slipped out and she landed on her back. The maitre’d and one of her friends helped her up and brought them to a table and gave her a seat. She felt pain in her back and an ambulance was called to take her to the hospital. Some casino personnel asked her how this happened and she told them what happened. She did not go back to look where she fell. Her friend went back and described what he called “grease” on the floor. She was brought to the hospital and did not go back to look at the area where she fell.
She was taken to the W.W. Backus Hospital in Norwich. The records disclosed at one point that she slipped on “grease” and later in the records it indicated she slipped on “wax”. Thereafter she received significant medical treatment.
The friend referred to above was one Anthony Gizzo. He went to the restaurant with the plaintiff, her husband, and another friend. They walked down the long corridor and waited about five minutes at the end of the corridor. He believed that it was a tile floor. He did not see anyone carrying food or spill anything. He did see the plaintiff slip and fall and rushed over to help her. He described the floor *457 as wet, and it felt like grease. The area was a circular area about two feet wide. The plaintiff had walked approximately 5-6 feet before she fell.
Mr. Gizzo also testified that the substance was wet, greasy, clear, and that he did touch it and it felt like grease. He also testified that he did not know what the substance was and he did not know how long it had been there.
The law governing this matter is Ordinance No. 98-1, an ordinance which established the Mohegan Torts Code. The prime liability issue in this case is whether the plaintiff established that she was caused to fall because of a dangerous condition on the premises. The Torts Code in Section 2(g) describes dangerous condition as follows:
(g) “Dangerous Condition” means a physical aspect of a facility or the use thereof which constitutes an unreasonable risk to human health or safety, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority in constructing or maintaining such facility. For the purposes of this subsection, a dangerous condition should have been known to exist if it is established that the condition has existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered.
The defendant enjoys sovereign immunity except to the extent that it is waived by the defendant. There is a limited waiver of sovereign immunity set forth in Section 3 of the Torts Code. Subsection (a) of Section 3 provides as follows:
(a) The sovereign immunity of the tribe shall continue except to the extent that it is expressly waived by this ordinance or to the extent that it has been previously waived by the Tribal council or by the Tribal Gaming Authority. Members of the Tribal Council and members of the Tribal Gaming Authority shall remain immune from suit for actions taken during the course and within the scope of their duties as such members.
Subsection (c) provides in subpara-graphs (1) and (2) as follows:
(c) The sovereign immunity of The Mohegan Tribal Gaming Authority is waived in the following instances:
(1) Injuries proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority;
(2) Injuries proximately caused by the condition of any property of the Mohegan Tribal Gaming Authority provided the claimant establishes that the property was in a dangerous condition.
In this case the court finds that the condition was not caused by any negligent act or omission of the defendant. It is also found that the defendant had no actual notice of such condition. Therefore, the issue turns on whether or not the condition should have been known to exist, and the Torts Code provides that it should have been known to exist, if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered.
This rule is commonly known as “constructive notice”.
Section 13 of the Torts Code provides that any claim brought under this ordinance shall be determined by the Gaming Disputes Court in accordance with Tribal Ordinance No. 95-4. Ordinance No. 95-4, An Ordinance Establishing the Gaming *458 Disputes Court, provides that the substantive law of the Mohegan Tribe for application by the Gaming Disputes Court shall be the law as set forth in any Mohegan Tribal Ordinances, the Connecticut General Statutes, and the common law of the State of Connecticut, except as such common law is in conflict with the Mohegan Tribal Law.
As to constructive notice, the law as set forth in the Mohegan Tribal Ordinances, and the Connecticut General Statutes, are silent. Therefore, the consideration of constructive notice will be determined by the common law of the State of Connecticut which is not in conflict with the Mohegan tribal law. The plaintiff argues that because of testimony of a witness that the plaintiff had waited approximately five minutes before following the nmitre’d into the dining room, and that they did not see anyone spill anything, that the condition must have existed for five minutes and that this was a sufficient period of time for the defendant to have constructive notice concerning this. The defendant argues that this was an insufficient period of time for the defendant to have had constructive notice of this condition.
For the reasons which follow, the court finds that the plaintiff has not proven that she fell because of a “dangerous condition”, in that the defendant was not shown to have constructive notice of this condition. The Connecticut law on this subject is very dear. In Fuller v. First National Supermarkets, Inc., 38 Conn.App. 299, 661 A.2d 110 (1995), the court set forth a summary of the Connecticut law as follows:
For the plaintiff to recover for the breach of a duty owed to her as a business invitee, she had to allege and prove that the defendant had actual or constructive notice of the presence of the specific unsafe condition that caused her fall. LaFaive v. DiLoreto, 2 Conn.App. 58, 60, 476 A.2d 626 (1984); see Monahan v. Montgomery, 153 Conn. 386, 390, 216 A.2d 824 (1966). “Either type of notice must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it.” LaFaive v. DiLoreto, supra, 60. If the plaintiff, however, alleges an affirmative act of negligence, i.e., that the defendant’s conduct created the unsafe condition, proof of notice is not necessary. Holody v. First National Supermarkets, Inc., 18 Conn.App. 553, 556, 559 A.2d 723 (1989). 38 Conn. at 301.
In Ormsby v. Frankel, 255 Conn. 670, 768 A.2d 441 (2001), the court noted that the accident was caused by an ice patch that existed at least two-and-one-half hours prior to the plaintiffs accident. The central issue there, as here, in the plaintiffs constructive notice argument was timing.
The central issue in the plaintiffs constructive notice argument was timing. As the Appellate Court noted: “Whether the two and one-half hour time period between Russell’s discovery of the ice patch and the accident was a reasonable time for the department to discover the problem is a question solely for the jury. While there may be conflicting evidence as to what is a reasonable time, there is no lack of evidence to suggest that a failure to discover the defect in two and one-half hours is unreasonable.” Ormsby v. Frankel, supra, 54 Conn.App. 98, 112-13, 734 A.2d 575 (1999).
The response time of the defendant to react to a dangerous condition is a fact-specific determination. In Prato v. New Haven, supra, 246 Conn. 638, 644, 717 A,2d 1216 (1998), even though the city had every reason to anticipate that a bonfire would be set on July 3, since *459 such a fee had been a neighborhood custom for the previous fifteen years, we concluded that the city did not have notice of the bonfire in question until it had been notified of the plaintiffs injury, which occurred roughly ninety seconds after the fire was set. We determined that ninety seconds was not long enough to provide notice to the city. Id. In Aaronson v. New Haven, supra, 94 Conn. 690, 693, 110 A. 872 (1920), we determined that one-half hour was enough time to hold the city liable for the plaintiffs injuries, given that the city was aware that its silent policeman had been prone to toppling. Similarly, in the present case, the jury was presented with evidence that a dangerous ice condition existed on Route 6 for at least two and one-half hours prior to the plaintiffs accident. We are satisfied that the jury was justified in determining that, given all of the evidence presented at trial, this length of time was sufficient for the defendant to have had constructive notice of the defect. 255 Conn. at 692, 693, 768 A.2d 441.
Whereas in Ormsby the court noted that two-and-one-half hours could be a sufficient period of time for the finder of fact to find constructive notice, ninety seconds was not long enough to provide notice to a city. The issue in this case is whether five minutes of a wet substance on the floor is sufficient length of time. The court holds that it is not.
When an unsafe condition, although temporary or transitory, arises out of the manner of doing business by the occupant of the premises, or may reasonably be expected to occur from his method of operation, a short period of time and possibly no appreciable period of time need exist to constitute constructive notice. But it still appears to be the general rule that if the matter on the floor which causes injury to a customer has been there for only a few minutes, knowledge of the condition cannot be imputed to the storekeeper. This rule has been applied where there has been as much as 10 or 15 minutes’ notice of the condition. On the other hand, where it can be shown that foreign matter had been present on the premises floor for 20 minutes, or for over an hour, the courts have found that the premises owner had constructive notice of the condition. 62A Am.Jur.2d, Sec. 580.
In this case the court finds that five minutes was not a sufficient length of time to constitute constructive notice.
Therefore, judgment may enter for the defendant.