M ANFREDI, Judge.
This action was commenced by Notice of Claim and Complaint dated January 10, 2000.
*475 The Complaint alleges that on July 14, 1999 the Plaintiff was a patron at the Mohegan Sun Casino and was caused to slip and fall on an accumulation of liquid on the floor of the men’s room located in the area of the casino known as the Wolf Den. The Plaintiff further claims that as a result of the slip and fall he sustained various physical injuries, and that his injuries and damages were caused by the negligence of the Defendant, its agents, servants or employees.
Among the claims of negligence are that the Defendant:
a.) Allowed an accumulation of liquid to remain on the floor for an unreasonable period of time when in the exercise of reasonable care, should have been known to exist thereby causing a dangerous condition;
b.) Failed to inspect said rest room in order to discover the dangerous condition caused by the accumulation of liquid;
c.) Failed to warn the plaintiff and others of the dangerous condition caused by the accumulation of liquid on the floor;
d.) Knew said dangerous condition had existed for an unreasonable period of time, yet no measures had been taken to remedy and correct the same;
e.) Failed to maintain said floor in such a way as to prevent the dangerous condition of an accumulation of liquid.
The Defendant’s Answer dated August 23, 2000 denied the allegations of negligence and causation, and a Special Defense alleging contributory or comparative negligence on the part of the Plaintiff was filed.

TRIAL

A trial of this case proceeded before the Court on December 4, 2001. The Plaintiff, Raymond Harris, his wife, Marcia Harris, and Mark Cloutier, Director of Environmental Services for the Mohegan Sun Casino all testified. Plaintiffs Exhibits 1-8 were admitted by agreement and without objection (Exhibit List attached). The evidence established the following facts.
On July 14, 1999 Mr. Harris was employed at Lee Company as a Supervisor and Machinist. He worked that day and after work, went to a marina where he kept a boat to work on it. From the marina he proceeded to the Mohegan Sun Casino where he was going to switch vehicles with his wife, who was already at the Casino, and purchase gas for his boat. He arrived at the Casino at approximately 8:45 p.m.
Once at the Casino, he met his wife at the “Bow and Arrow” bar. He remained there for about 20 minutes, had a glass of beer and then went to the “Wolf Den” where he had another beer, played video poker and won about $300.00 in quarters which he carried in two plastic buckets provided by the casino to its customers.
The Plaintiff left the “Wolf Den” at around 9:15 p.m. carrying the two plastic buckets of quarters, one in each hand, held close to his chest. He entered a small men’s room located near the bar. It contained two toilet stalls and two urinals. Mr. Harris proceeded to the furthest stall and entered it, using his leg or knee to open the stall door since he was still holding the two buckets of quarters.
As he entered the stall he slipped in a puddle of liquid he thought to be water and fell, hitting his right hip on the toilet and his left shoulder on the floor. He was able to keep most of the quarters from spilling as he fell.
His shoulder hurt very badly as a result of the fall, and he remained on the floor for about three minutes. He called for help but no one was in the area. He finally got up on his own and went back to *476 the “Wolf Den” and cashed in his quarters. Mr. Harris then went to his truck to go home but was in too much pain to drive. He returned to the casino and to the bathroom where he fell but no one was there. He then went to the “main” bathroom and found an.attendant, reporting the incident. Security was called and eventually, Ken Hoyt from the casino security responded to take Mr. Harris’ complaint.
As a result of Mr. Hams’ complaint, Mr. Hoyt inspected the bathroom at approximately 11:10 p.m. At that time the floor was dry. Mr. Hams had no idea how long the liquid was on the floor before he fell.
The Mohegan Sun has a written policy that the restrooms are to be “clean and stocked at all times.” The Department of Environmental Services has a duty to maintain the restrooms, inspect them and keep them clean. An attendant is assigned to each restroom, but is not required to be present in a particular restroom at all times. There is no time schedule for frequency of inspections.

DISCUSSION

Jurisdiction is vested in this Court pursuant to Tribal Ordinance 95-4 “An Ordinance Establishing the Gaming Disputes Court” (hereafter referred to as M.T.O. 95-4), and this case is brought pursuant to the provisions of Tribal Ordinance 98-1 “An Ordinance Establishing the Mohegan ToHs Code ” (hereafter referred to as M.T.O. 98-1). Although Plaintiffs complaint refers to Tribal Ordinance 96-2, that ordinance was repealed and replaced with Ordinance 98-1 May 5, 1998. M.T.O. 98-1 provides that:
“(b) Except to the extent that it has been previously waived by the Tribal Council or by the Mohegan Tribal Gaming Authority, the Mohegan Tribal Gaming Authority may be sued solely in the Mohegan Tribal Gaming Disputes Court.
(c) The sovereign immunity of the Mohegan Tribal Gaming Authority is waived in the following instances: ...
(2) Injuries proximately caused by the condition of any property of the Mohegan Tribal Gaming Authority provided the claimant establishes that the property was in a dangerous condition;”
Additionally, a “dangerous condition” is defined in the Ordinance as follows:
“(g) “Dangerous Condition” means a physical aspect of a facility or the use thereof which constitutes an unreasonable risk to human health or safety, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority in constructing or maintaining such facility. For the purposes of this subsection, a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered.
A dangerous condition shall not exist solely because the design of any facility is inadequate nor due to the mere existence of wind, water, ice or temperature by itself, or by mere existence of a natural physical condition. Nothing in this section shall preclude an accumulation of water, snow, or ice from being found to constitute a dangerous condition when the Mohegan Tribal Gaming Authority fails to use existing means available to it for the removal of such accumulation and reasonable time to act.”
M.T.O. 95-4 states:
“Section SOI — Sources of Tribal Law. The substantive law of the Mohegan *477 Tribe for application by the Gaming Disputes Court shall be:
(a) The law as set forth in any Mohegan Tribal ordinances or regulations.
(a) The General Statutes of Connecticut, as may be amended from time to time, are hereby adopted as and declared to be the positive law of the Mohegan Tribe for application by the Gaming Disputes Court, except as such statutes are in conflict with Mohegan Tribal Law.”
The common law of the State of Connecticut interpreting the positive law adopted in section 301(b), above, which body of law is hereby adopted as and declared to be the common law of the Mohegan Tribe for application by the Gaming Disputes Court, except as such common law is in conflict with Mohegan Tribal Law.
The Sovereign Immunity of the Mohegan Tribal Gaming Authority is waived in this case only if the Plaintiff established that his injuries were proximately caused by a “dangerous condition” upon the Defendant’s property. Further, as indicated in the ordinance, a “dangerous condition” is a physical aspect of the facility which constitutes an unreasonable risk of harm and which is known to exist, or which in the exercise of reasonable care should have been known to exist, and which was proximately caused by the negligent acts or omissions of the Defendant in maintaining the facility. Finally, the condition should have been known to exist if it is established that it existed for such a period of time and was of such a nature, that in the exercise of due care, it should have been discovered.
These definitions or tests are essentially adopted from the common law of the State of Connecticut as set out in the opinions of the Connecticut Supreme Court, and it is to these opinions that we should look to seek guidance in determining if the evidence before the court sufficiently establishes Plaintiffs claim. The core issue is one of constructive notice.
The only evidence regarding a “dangerous condition” before the court is the Plaintiffs testimony that there was a puddle of some type of liquid on the floor inside the stall of the men’s room where he fell. Beyond that, we know nothing further. The Plaintiff had no idea how long the puddle existed, and no other witness or documentation was produced from which this court could infer how long it had been there, or how it came to be there. Any conclusions relating to these issues would be speculation.
Although the Plaintiff produced documentation establishing Defendant’s policy to keep restrooms clean at all times, the mere fact that a puddle existed at the time Plaintiff fell does not by itself establish a failure of duty of inspection by the Defendant. The policy or internal rules of the Defendant, though admissible on the issue of negligence, i.e., reasonable care and inspection, are not dispositive on that issue.
“Unlike a breach of a statutory regulation designed for the protection of the public, the breach of the rules and orders of an employer are not regarded in this jurisdiction as amounting to negligence in law, but are merely evidence of negligence to be considered in the light of all the other relevant testimony in the case; they are “some evidence” of negligence.”
Mascoela v. Wise, Smith & Co., 120 Conn. 699, 181 A. 629 (1983).
Also see Hurley v. Connecticut Co., 118 Conn. 276, 282, 172 A. 86 (1934).
Regardless of the Defendant’s policy, it is still incumbent upon the Plaintiff to establish that the condition existed for a sufficient period of time such that the De *478 fendant should have, in the exercise of reasonable care, discovered it. This Plaintiff has failed to do.
The facts before the Court are similar to those found in Edwards v. F. W. Woolworth Co., 129 Conn. 245, 27 A.2d 163 (1942). In that case, a Plaintiffs verdict was set aside by the trial court and the Connecticut Supreme Court upheld that decision in a per curiam ruling. The court stated:
“When the plaintiff entered about noon there was a crowd about the lunch counter. The floor was littered with broken cookies, a piece of bread, a broken, dirty roll and the like. She turned to enter an aisle of the store, and when she was about five feet from the place where the frankfurters were sold, she slipped and fell. After falling she looked around and saw a dry, dirty frankfurter skin on the floor which she claimed caused her fall. There was no evidence as to the length of time the skin had been on the floor, nor any evidence that anything else on it would make it slippery. We [129 Conn. at 246] agree with the trial court that the jury could not reasonably have concluded that the skin had been on the floor in a position to cause danger to customers a sufficient length of time so that the defendant should in the exercise of a reasonable inspection have discovered it. Mascoela v. Wise, Smith & Co., 120 Conn. 699, 181 A. 629; O’Brien v. H.L. Green Co., 128 Conn. 68, 20 A.2d 411.”
See also, Morris v. King Cole Stores, 132 Conn. 489, 494, 45 A.2d 710 (1946) where the court stated:
“Cases involving the condition of floors in retail markets are collected in [Duty mid liability respecting condition of store or shop, 1924 WL 57601], 33 A.L.R. 181 [1924]; Markman v. Fred P. Bell Stores Co., 285 Pa, 378, 132 A. 178, 43 A.L.R. 862 [1926]; Law v. Morris, 102 N.J.L. 650, 133 A. 427, 46 A.L.R. 1108 [1926], [Duty and liability respecting condition of stare or shop, 1929 WL 59672], 58 A.L.R. 136 [1929], and J.C. Penny Co. v. Robison, 128 Ohio St. 626, 193 N.E. 401, 100 A.L.R. 705 [1935], They show substantial agreement as to the rules of law but are not in harmony as to the application of the law to the facts of a case. To a considerable degree each case must be decided on its own circumstances. Evidence which goes no farther than to show the presence of a slippery foreign substance does not warrant an inference of constructive notice to the defendant.”
The evidence fails to show more than the presence of a puddle on the floor which does not warrant an inference of constructive notice. The mere existence of the puddle of liquid on the floor does not, by itself, warrant, a finding of a “dangerous condition” within the meaning of M.T.O. 98-1.
Judgment shall therefore enter for the Defendant.