MEMORANDUM OF DECISION
EAGAN, Judge.
FINDINGS OF FACT
On the evening of July 17, 2003, the plaintiff, Nancy Miller, was a patron/invitee at the Mohegan Sun Gaming Casino. The plaintiff was on her way to the ladies restroom in the area of the Casino of the Sky. While walking there, she slipped and fell on a clear, wet substance on the smooth surface of the terrazzo floor.
The defendant’s videotape of the incident, as well as photographs taken of the floor shortly thereafter, corroborate the plaintiffs testimony concerning her slip and fall and the existence of the clear, wet substance.
After her fall, plaintiff was treated at Backus Hospital emergency room, where an x-ray was taken showing a chipped carpal fracture of the left wrist. Plaintiff also sustained less serious injuries to her right wrist, her hands and her right knee.
Plaintiff testified that she had no idea as to how long the wet substance had been on the floor before she slipped and fell on it. There was no evidence as to how the wet substance came to be on the floor or the length of time it was there. The Security Supervisor for the Casino testified that he could find no witnesses who observed the event when he arrived at the scene shortly after the fall.
The head of the Casino’s Department of Environmental Services, which is responsible for maintaining and cleaning the Casino, testified with regard to maintenance of the area where the fall occurred. He stated that three employees were assigned to continuously circle the rotunda, including the area of the fall, to keep it free of debris and spills. In addition, there were two restroom attendants with work closets immediately outside the restrooms, who are responsible for cleaning up any spills in the area that they observe. Additionally, three supervisors and a manager make periodic rounds of the area.
The Casino’s Security Supervisor es responsible for contacting the Casino’s Security and Surveillance Department to review its camera coverage of an incident and did so here. He routinely does not request that the videotape be inspected for any time prior to an incident to see how long a condition existed. The instant videotape does not show the area of the fall for any period of time before the fall and was less than two minutes long.
The Director of Technical Operations for Security and Surveillance testified that he was not familiar with any policy regarding how much videotape coverage pre and post incident is requested, when, as here, a surveillance camera is involved. Security personnel will call Surveillance personnel and tell them to check for any video clip of the incident. Surveillance will then review the footage and provide exactly the clip requested. The tapes aré then given to the Risk Management Department when a patron is injured and that Department has seven days to obtain any additional images relating to the incident. He knew of no *545 occasion where Risk Management had contacted his Department to obtain either pre or post images relating to a patron injury. On the eighth day, the images are written over because of the expense of maintaining huge archives of videos. If a request is made after the eighth day, it cannot be met. From his review of many tapes in the past, it would have been potentially possible to see when a spill occurred here.
DISCUSSION
This action is governed by the Mohegan Tribal Ordinance (“MTO”) 2001-07,[1] known as the Mohegan Torts Code. The Mohegan Torts Code applies to “any and all tort claims arising on the Mohegan Reservation that may be brought against the MTGA ...” 2001-07, Sec. 4(C); and is “the exclusive means of adjudication of claims brought against the MTGA ...” 2001-07, Sec. 4(D).
MTO 2001-07, Section 5 A(20) defines a “Tort” as “an injury to a person caused by breach of a legal duty to that person ... Section 5 A(8) defines a “duty” as an “obligation ... to conform to a particular standard of conduct”, while Section 5 A(10) defines “Fault” as “... the failure to fulfill a legal duty”. Negligence is defined in Section 5 A(15) to mean:
“conduct that falls below the standard established by law custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances.”
The import of Section 5 A(8)(10)(15) and (20) is to impose a duty on the defendant to exercise reasonable care to maintain its premises in a reasonably safe condition for reasonably anticipated uses by its patrons, invitees and guests. In determining whether the defendant breached any duty it owed the plaintiff in the instant case, MTO 95-4 states:
Section 301 Sources of Tribal Law. The substantive law of the Mohegan Tribe for application of the Gaming Disputes Court shall be:
(a) The law as set forth in any Mohegan Tribal ordinances and regulations.
(b) The Connecticut General Statutes, of Connecticut, as may be amended from time to time, are hereby adopted as and declared to be the positive law of the Mohegan Tribe for application by the Gaming Disputes Court, except as statutes are in conflict with Mohegan Tribal Law.
(c) The common law of the State of Connecticut interpreting the positive law adopted in Section 301(b), above, which body of law is hereby adopted as and declared to be the common law of the Mohegan Tribe for application by the Gaming Disputes Court, except as such common law is in conflict with Mohegan Tribal Court.
Plaintiff argues that defendant owed her, as a patron and invitee, a duty to keep the terrazzo floor of the Casino of the Sky free of slippery, wet substances and that the defendant breached its duty by failing to remedy this dangerous condition, which it knew or should have known, existed.
It is undisputed that the defendant owed a duty to plaintiff, as a business invitee, to maintain its premises in a reasonably safe condition and to inspect the premises. Baptiste v. Better Val-U Supermarket, Inc,, 262 Conn. 135, 140, 811 A.2d 687 (2002). It is also undisputed that, if the defendant breached this duty and had actual or constructive notice of the defect within a reasonable time to remedy *546 it, the plaintiff can recoup for her injuries. Morris v. King Cole Stores, Inc., 132 Conn. 489, 45 A.2d 710 (1946).
On several occasions, this Court has considered the doctrine of constructive notice. Schiff v. Mohegan Tribal Gaming Authority, 2 G.D.R. 117, 6 Am. Tribal Law 519, 2005 WL 6238998 (2005); Gentile v. Mohegan Tribal Gaming Authority, 1 G.D.R. 76 (2003); Harris v. Mohegan Tribal Gaming Authority, 1 G D.R. 86 (2001). In each case, the Court concluded that the substance must have been on the floor for a sufficient period of time for the defendant to have the opportunity to discover and remedy it, which is a rule embodied in Connecticut common law. McCrorey v. Heilpern, 170 Conn. 220, 221, 365 A.2d 1057 (1976) (whether the defendant had constructive notice of a condition depends on whether the condition existed for a sufficient length of time for the defendant, in the exercise of due care, to discover the defect in time to remedy it).
In the instant ease there was no evidence as to how long the clear, wet substance was on the floor in the area where the plaintiff slipped. The plaintiff had no idea how long the wet floor had existed and no other witnesses or documentation were produced from which this Court could infer how long the wet substance had been there or, in fact, how it came to be there.
Plaintiff seeks to fill this evidentia-ry void by the fact that defendant had destroyed the portion of the videotape immediately preceding her fall. Plaintiff asks this Court to infer from defendant’s destruction of the videotape preceding the fall that defendant had constructive notice of the wet surface. Indeed, the defendant’s Director of Security and Surveillance testified that the spill could potentially have been seen on the portion of the videotape which had been destroyed.
In Beers v. Bayliner Marine Corp., 236 Conn. 769, 675 A.2d 829 (1996), the Connecticut Supreme Court stated that, in a civil case, “an adverse inference may be drawn against a party who destroyed evidence only if the trier of fact is satisfied that the party who seeks the adverse inference has proven ...” that the spoilage was intentional. “By this, we do not mean that there must have been an intent to perpetrate a fraud by the party or his agent who destroyed the evidence but, rather, that the evidence has been disposed of intentionally and not merely destroyed inadvertently.” Id., 777, 675 A.2d 829
In a case involving the destruction of a videotape, Ayres v. Leonard, 03-CBAR-0619 (CV000181112, Stamford-Norwalk Judicial District, March 6, 2003), the Court found the evidence was sufficient to show the defendant was aware a videotape should have been preserved, but that this alone did not necessarily prove the defendant intentionally disposed of it within the meaning of Beers, supra.
Similarly here, the evidence could be construed to support a finding that the defendant knew the portion of the tape preceding the fall should have been preserved. Yet, without more, we cannot find the destruction of the evidence was intentional. Rather, the evidence shows that it was a long-standing policy of the defendant to write over existing videotapes after the eighth day in order to avoid extensive video archives.
Further, there is also no evidence that the defendant had reviewed the portion of the videotape preceding plaintiffs fall. In; fact, all the evidence is to the contrary.; While plaintiff asks the Court to infer the destroyed tape would have shown the wet’ surface had existed for a sufficient amount of time to constitute constructive notice, if is equally possible the destroyed videotape; *547 would have shown another patron spilling a glass of water only moments before plaintiff slipped and fell. This factor also supports a finding that the destruction of the videotape was not intentional.
In future cases, however, the Court assumes that no videotapes relevant to a pending issue wall be destroyed. The defendant’s future destruction of such evidence will make it exceedingly difficult to find the destruction wras unintentional.
Judgment may enter for the defendant.

. Effective June 22, 2005, MTO 2001-07 was repealed and replaced by MTO 2005-02.