BACKGROUND
EAGAN, Judge.
The case was tried to the Gaming Disputes Court, at which time seven witnesses *382 testified and multiple exhibits entered into the record.
The issues in this case are predominantly factual, rather than legal in nature. According to the plaintiff, the preponderance of the evidence introduced at trial establishes that on February 25, 2005, the plaintiff and his brother arrived at the Mohegan Sun Casino mid-afternoon where they parked on the 5th floor of the Riverview Garage.
At the time, the 5th level of the garage appeared clean of snow and ice. However, there were mounds of snow piled up against the wall of the garage which had been plowed there by the defendant. The afternoon was partly sunny.
At approximately 8:00 p.m., Mr. Bernardo and his brother left the Casino and took the elevator back up to the 5th level of the garage. As the plaintiff walked to his car, he slipped and fell on ice, which he did not see prior to his fall. The ice was the result of the snow piled up against the garage that melted as the temperature rose and then refroze in the evening. After his fall, plaintiff was unable to move, was in excruciating pain, and was eventually transported by ambulance to the William Backus Hospital in Norwich, Connecticut.
The defendant does not dispute that plaintiff slipped and fell on ice when walking to his car parked on the 5th floor of the Riverview Garage. Defendant also does not dispute that plaintiff was injured as a result of the fall.
Instead, defendant argues that the evidence shows the Riverview Garage was closed to the public throughout February 25, 2005 due to a prior snowstorm. Therefore, the plaintiff was a trespasser, or at best a licensee, at the time he fell.
Defendant also claims that plaintiff did not meet his burden of proof of showing that the ice remained on the garage floor beyond a reasonable time allowable to remediate the icy condition. Defendant further contends that plaintiff failed to meet its burden of establishing that it had actual or constructive notice of the ice. Additionally, defendant argues that it used reasonable care in maintaining the roof parking area.
Finally, defendant argues that the plaintiff was negligent in not observing the area of ice or, if he did observe it, negligent in proceeding to walk on it.
FINDING OF FACTS
1. On February 25, 2005, the plaintiff, accompanied by his brother, drove to the Mohegan Sun Casino where he parked his car on the 5th floor of the Riverview Garage at approximately 2:00-3:00 p.m.
2. February 25, 2005, was a generally fair day, partly sunny and, at times cloudy, with temperatures at or above freezing in the afternoon in the Montville/Mohegan Sun Casino area.
3. On February 24, 2005, there had been a snowfall of between 8-1/2 and 9-1/2 inches in the area.
4. When the plaintiff entered the Riv-erview Garage, there were no barricades to the entranceway, and there were other patrons’ cars parked in the garage, including on the 5th floor.
5. The plaintiff parked his car close to the entrance way to the elevators to the Casino in the handicapped parking area on the 5th level.
6. At the time the plaintiff parked his car, the garage floor was clean of any ice or snow.
7. At the time the plaintiff parked his car, there were mounds of snow piled up against the wall of the 5th floor as a result *383 of the defendant’s plowing of the snow from the prior snow storm.
8. By 6:00 p.m., on February 25, 2005, the temperature in the Montville/Mohegan Sun Casino area dropped to below freezing.
9. At approximately 8:00 p.m. on February 25, 2005, the plaintiff and his brother took the elevator from the Casino back up to the 5th level of the garage.
10. The plaintiff exited onto the paved section of the lot and began walking to his car.
11. As he approached the rear of the car, the plaintiff slipped and fell on ice.
12. The snow that had been plowed up into piles against the garage wall melted during the daytime and refroze as it ran off when the temperature dropped to below freezing.
13. The plaintiff did not see the ice that caused him to slip and fall, before he stepped on it.
14. The 5th floor of the Riverview Garage had not been sanded, salted or otherwise treated at the time the plaintiff fell.
15. After he fell, the plaintiff was unable to move and was in excruciating pain in his right hip and wrist.
16. Because the plaintiff was in so much pain after his fall, an agent of the Mohegan Tribal Protective Services was unable to take his statement at that time.
17. The plaintiff was taken by ambulance to the William W. Backus Hospital in Norwich, Connecticut, where he stayed for approximately 4 days.
18. Following his discharge from the hospital, plaintiff was an inpatient at the Montowese Health and Rehabilitation Center for 19 days.
19. Upon his discharge from Mon-towese to his home, plaintiff was prescribed the services of a visiting nurse for another 30 days.
20. Plaintiffs total medical bills incurred as a result of his fall at the Casino on February 25, 2005 were $50,415.05.
21. As a result of the fall, the plaintiff suffered an intertrochanteric fracture of his right hip and a fracture of his right distal radius.
22. Because of his hip injury, plaintiff underwent a surgical procedure in which a rod is nailed into the bone with fenestra-tions in the rod for screws to stabilize the fracture.
23. As a result of the accident, plaintiff suffered a permanent loss of 7% of his right lower extremity and a 5% loss to his right wrist.
24. At the time of his fall, plaintiff was 65 years old.
25. Prior to his fall at the Casino, the plaintiff led an active life, assisted his son in his restaurant business and considered opening a restaurant himself, or taking over one owned by his son.
26. Prior to his fall, plaintiff did have some back pain and, on occasion, used a cane, which he was not using on February 25, 2005.
27. Since the accident, the plaintiff has experienced significant hip and groin pain as a result of the rod, which cannot be removed, as well as some pain in his right wrist when it is subject to extreme movement.
28. As a result of the injuries sustained from the accident, the plaintiff now spends most of his time at home, watching television.
DISCUSSION
1. Standard of Care
At the time of plaintiffs fall on February 25, 2005, Mohegan Tribal Ordinance *384 (“MTO”) 2001-07, known as the Mohegan Trots Code, was in effect[1] and governs this action.
The Mohegan Torts Code: applies to “any and all tort claims arising on the Mohegan Reservation that may be brought against the MTO A ...” 2001-07, Sec. 4(c); and is “the exclusive means of adjudication of claims brought against the MTGA ...” 2001-07, Sec. 4(D) The plaintiffs claim is clearly a tort claim asserting negligence in connection with the MTGA’s maintenance of the Riverview Garage. Negligence was defined in M.T.O.2001-07, Sec. 5 A(15), to mean
“conduct that falls below the standard established by law or custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances.”
Defendant does not dispute that if plaintiff were a business invitee, it owed plaintiff a duty to maintain the Riverview Garage in a reasonably safe condition and to inspect the premises. Defendant argues, however, that because the Riverview Garage was closed to the public on February 25, the plaintiff was a trespasser or, at best, a licensee, at the time he fell. Accordingly, defendant concludes that the duty of care it owed the plaintiff was less than that owed to a business invitee at the time of the accident.[2] “There is no duty owed to the trespasser for the condition of the premises; ...”, Connecticut Law of Torts, 3rd Ed., Douglas R. Wright, et al, Section 47, p. 110; “ ‘The duty that a ... [possessor of land] owes to a licensee, [however] does not ordinarily encompass the responsibility to keep the property in a reasonably safe condition because the licensee must take the premises as he finds them.’ ” Morin v. Bell Court Condominium Ass’n, Inc., 223 Conn. 323, 327, 612 A.2d 1197 (1992)
The evidence does not support the defendant’s assertion that the Riverview Garage was closed on February 25, at the time the plaintiff entered the garage. While the Grounds Supervisor for the Casino testified that it would be standard practice to close the Casino garages by barricading their entrances in light of such snowfall as had occurred prior to February 25, he had no records showing that the Riverview Garage was closed or barricaded on February 25. The Parking Manager of the Mohegan Sun, whose employees are physically responsible for putting up the barricades closing the garages, also had no records of the February snow storm nor independent recollection of whether the Casino garages were barricaded or not during the relevant time frame.
More significantly, the Mohegan Tribe’s investigating officer with respect to the plaintiffs fall, testified that when he drove up the ramp entering the 5th level of the Riverview Garage very shortly after the plaintiff fell, he saw barricades stacked to the side. This stacking indicated to him that the Riverview Garage at one time had been closed, but was now open. He also testified that he took photographs of the 5th floor and that there were cars of other patrons parked there, in addition to the plaintiffs car. Additionally, the officer testified that when he called to report the icy conditions and request the 5th floor be sanded and salted, no one informed him the garage had been closed.
*385 The officer’s testimony supports the plaintiff who stated that he did not recall seeing barricades when he drove up to the 5th level of the Riverview Garage. At approximately 2 a.m. on February 26, 2005, when the plaintiffs sons drove to the 5th level of the Riverview Garage to pick up the plaintiffs car, there were still no barricades, but the floor had now been sanded.
The defendant further argues that the barricades closing the Riverview Garage were removed by other patrons seeking entiy to the garage and not by the defendant or its agents. Although the defendant did offer testimony that patrons, on occasion, were known to move barricades to gain entry to a closed garage, there was no evidence showing that this happened here. Moreover, the investigating officer testified that when he saw the barricades stacked to the side, he assumed the defendant’s grounds people had removed them from the entry way.
Accordingly, in view of the lack of evidence that the entryway to the River-view Garage was barricaded, or otherwise closed, when the plaintiff drove up to the 5th level, plaintiff must be treated as a business invitee of the defendant, for purposes of the relevant standard of care. As such, the defendant owed a duty to the plaintiff to maintain its premises in a reasonable safe condition and to inspect the premises. Baptiste v. Better Val-U Supermarket, Inc., 262 Conn. 135, 140, 811 A.2d 687 (2002); Miller v. Mohegan Tribal Gaming Authority, 2 G.D.R. 149, 150-151 (2005); Gentile v. Mohegan Tribal Gaming Authority, 1 G.D.R. 76, 78, 3 Am. Tribal Law 455, 2001 WL 36175286 (2001)
2. The Defendant’s Knowledge of the Icy Conditions
There is no dispute between the parties that the defendant must have known or had reason to know of the icy condition on the 5th floor of the Riverview Garage with a reasonable time to remedy it for the defendant to be liable for the plaintiffs injuries. McCrorey v. Heilpern, 170 Conn. 220, 221, 365 A.2d 1057 (1976); Schiff v. Mohegan Tribal Gaming Authority, 2 G.D.R. 117, 118, 6 Am. Tribal Law 519, 2005 WL 6238998 (2005); Harris v. Mohegan Tribal Gaming Authority, 1 G.D.R. 86, 87 (2004) There is also no dispute that the area of ice where the plaintiff fell resulted from the melting of snow which the defendant’s agents had plowed into mounds at the edge of the top level of the garage.
It is, however, the defendant’s position that there was no evidence as to precisely when the melting snow was transformed into ice and, therefore, the defendant cannot be charged with either actual or constructive notice of any icy condition.
There are problems with defendant’s reasoning.
Having acknowledged that it was responsible for the mounds of snow on the 5th floor level of the garage, the defendant cannot avoid responsibility by failing to keep itself informed as to the prevailing weather conditions which could result in the melting and refreezing of the snow. For several days prior to the day of plaintiffs fall, the Norwich Bulletin weather predictions were for temperatures above freezing and then to fall below freezing. These predictions were confirmed by plaintiffs meteorological expert. In view of the duty defendant owed patrons of the Casino parking garages, it was incumbent on the defendant to keep itself informed as to such weather forecasts and to act accordingly. Further, the meteorological evidence introduced by. plaintiff shows that the temperatures were conducive to ice *386 forming in the geographic area of the garage, several hours before the plaintiff slipped and fell on the ice in the Riverview Garage.
The inescapable conclusion from the facts is that the standard of care owed to business invitees mandated the defendant take Steps to investigate for ice and to take precautions, such as sanding or salting, to remove the ice. The defendant may not have had actual knowledge of the icy conditions in the Riverview Garage at the time plaintiff fell, but it certainly had reason to know that such icy conditions were very likely to occur and to inspect for such ice.
The defendant counters that because it had barricaded the entry to the Riverview Garage, it was relieved of any obligation to inspect for icy conditions. The problem with this argument is that the evidence does not show the defendant, in fact, barricaded the entry. Further, to the extent defendant asserts that other patrons removed the barricades, the defendant was on notice that this was a problem in the past. Yet, defendant offered no evidence that, in light of this knowledge, it made any effort to ensure barricades were not tampered with during the relevant February time frame.
3. Plaintiff’s Contributory Negligence
Defendant’s last argument is that the plaintiffs “own negligence should be considered the proximate cause of the accident and Ms injuries.” Defendant’s Post-Trial Brief, p. 18. Defendant’s assertion that plaintiff was negligent in traversing the ice is based on the Incident Report which indicates that the plaintiff saw the ice and warned his brother prior to falling.
At trial, plaintiff testified that he had no recollection of the warning and did not see the ice prior to falling. The photographs taken by the Tribe’s investigating officer show what appears to be a black stain on the garage floor where the plaintiff fell. According to the testimony of plaintiffs expert on examining the photographs:
“From the black and white picture that I saw it basically appeared to be more damp than the solid ice path. It was more like a black ice. You know where something just covers the ground liquid and freezes over and you can still see the pavement underneath and that’s why it’s called black ice. Because it is almost transparent.”
The evidence that the plaintiff fell on ice, which he did not see before falling, is compelling. Moreover, even if plaintiff had warned his bother to be careful, there is no evidence that this warning was issued before the plaintiff actually had stepped on to the ice and began to slip. As the Connecticut Supreme Court noted in Bunnell v. Waterbury Hospital, 103 Conn. 520, 525-526, 131 A. 501 (1925), “a partial step, the foot upon the sill as the door opened, the balance lost, even a little, and the fall is inevitable.”
The test for whether the plaintiffs conduct was negligent is that of an ordinary person under the same circumstance. Applying this test to the evidence requires the conclusion that plaintiff was not negligent in walking the approximately 20 steps to his car at the time he fell.
DAMAGES
In its Post Trial Brief, the defendant does not challenge the plaintiffs evidence of $50,415.05 in medical bills associated with the fall, nor is there any evidence contradicting these bills. Accordingly, an award in this amount is appropriate.
With regard to plaintiffs claim for non-economic damages, the evidence also is uncontradicted. Immediately upon falling, *387 plaintiff experienced excruciating pain in his hip and wrist. His hospital stay was followed by extensive rehabilitation. Plaintiff continues to experience severe pain, primarily due to the pin inserted in his hip as a result of the fall.
Before his fall, the plaintiff led an active life, relying only occasionally on a cane due to some back pain. He worked with his son at his restaurants and thought he might eventually acquire one of these restaurants to operate. Now, the plaintiff spends most of his time at home in front of the television, as the result primarily of hip pain occasioned by the accident.
Mohegan Tribal Ordinance 2001-07, Section 9(D), which was in effect at the time of plaintiffs fall, provides that “No award for non-economic damages in excess of 200% of the actual damages sustained can be recovered from the MTGA or any official, agent, representative or employee of the MTGA”. Based on the evidence, this court awards plaintiff the maximum amount permissible of $100,830.10 for pain and suffering.
Judgment may enter for the plaintiff in the amount of $151,245.15 in actual damages and for pain and suffering.

. Effective June 22, 2005, MTO 2001-07 was repealed and replaced by MTO 2005-02.

. Defendant acknowledges that when plaintiff was in the Casino he clearly was a patron and, therefore, a business invitee.